**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KELLY STREET HOLDINGS, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **UNDERWRITERS AT LLOYD'S,** | § | |
| **LONDON, INTERSTATE FIRE &** | § | |
| **CASUALTY COMPANY, AND** | § | |
| **INDEPENDENT SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendants.** | § | |

**NOTICE OF REMOVAL**

Defendants Underwriters at Lloyd's, London,[1] Interstate Fire & Casualty Company, and Independent Specialty Insurance Company (collectively, the "Insurer Defendants"), file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 and 9 U.S.C. § 200 *et seq*., as follows:

**I.      STATEMENT OF REMOVAL**

1.      On December 14, 2020, Plaintiff Kelly Street Holdings (the "Plaintiff") filed suit against the Insurer Defendants in the District Court for Fort Bend County, Texas (the "State Court Action"). A copy of all the pleadings filed in the State Court Action are attached as exhibits, as required by 28 U.S.C. § 1446(a) and Local Rule 81.

2.      In the State Court Action, the Plaintiff seeks insurance coverage from the Insurer Defendants for alleged damage to its properties that purportedly occurred during the policy period. As explained below, the Plaintiff claims that the Insurer Defendants failed to pay the amounts owed under the policy at issue. Based on these allegations, the Plaintiff asserts claims

---

[1] Certain Underwriters at Lloyd's, London are improperly named in Plaintiff's Original Petition.

for breach of contract, violations of the Texas Deceptive Trade Practices Act and Insurance Code, and breach of the duty of good faith and fair dealing. *See* Compl., Ex. A.

3.     The Plaintiff seeks coverage under a commercial property policy, with numbers VLCCN000066402, VRXCN000066402, and VISCN000066402 (the "Policy").   A true and correct copy of the Policy is attached as Exhibit "B."

4.     The carriers subscribing to the Policy include Interstate Fire & Casualty Company, Independent Specialty Insurance Company, and certain underwriters in the Lloyd's of London insurance market.   More specifically, there are two private limited companies that subscribe to the Policy through the Lloyd's market.   These private limited companies are Nephila 2357 Ltd. and RenaissanceRe Corporate Capital (UK) Limited.

5.     Nephila 2357, Ltd. and RenaissanceRe Corporate Capital (UK) Limited are private limited companies that are organized under the laws of England and Wales and have their principal places of business there.

6.     The Policy includes an Arbitration Provision that is enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").   As discussed below, under Chapter 2 of the Federal Arbitration Act (the "FAA"), federal district courts have original jurisdiction over all disputes falling under the Convention.   9 U.S.C. § 203.   Even more, a defendant may remove any state court action that relates to an arbitration agreement or an award that is subject to the Convention at any time. 9 U.S.C. § 205.

7.     For this reason and those outlined below, this Court has original jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C. § 203.   Thus, removal is proper under 9 U.S.C. § 205 and 28 U.S.C. § 1441 and 1446.

## II.   THE INSURANCE POLICY AND STATE COURT ACTION

8.     The Policy provided commercial property coverage to the Plaintiff for certain commercial properties for the period of December 22, 2018 to December 22, 2019, subject to the Policy's terms, conditions, and exclusions.

9.     The Policy is an insurance contract between the Plaintiff and its insurers, Interstate Fire and Casualty Company, Independent Specialty Insurance Company, and Certain Underwriters at Lloyd's, London.   Certain Underwriters at Lloyd's London refers to an unincorporated association of members that insure risks through the Lloyd's of London insurance market.   Here, the specific members subscribing to the Policy through the Lloyd's of London market are Nephila 2357, Ltd. and RenaissanceRe Corporate Capital (UK) Limited.

10.     In particular, as shown in the Policy, the members of Syndicate No. 2357 and 1458 subscribed to the Policy.   Ex. B at VRU-055-0518.   The only member that subscribed to the Policy through Syndicate 2357 is Nephila 2357 and the only member that subscribed to the Policy through Syndicate 1458 is RenaissanceRe Corporate Capital (UK) Limited.

11.     The Policy contains an Arbitration Provision, which states:

### Section VII – CONDITIONS

* * *

C.     **ARBITRATION CLAUSE:** All matters in dispute between the **NAMED INSURED** and the **INSURER(S)** (hereinafter referred to as "the parties") in relation to this insurance, including this **POLICY'S** formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty (30) days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his or her Arbitrator and give written notice thereof to the Respondent. Within thirty (30) days of receiving such notice from Claimant, the Respondent shall

appoint his or her Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

If the two Arbitrators fail to agree on the selection of the umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons presently or formerly employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

Any Arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

(the "Arbitration Provision").  Exhibit B at 32-33 of 49.

12.     The Plaintiff claims that the Defendant Insurers failed to pay money owed under

the Policy.  The Defendant Insurers dispute that anything is owed because the Plaintiff failed to

comply with its obligations under the Policy.  This is a "matter in dispute" that must be referred to arbitration according to the Arbitration Provision.

## III.   THIS COURT HAS ORIGINAL JURSIDCTION

14.    The removal of this action is based on this Court's jurisdiction of all civil actions arising under the treaties of the United States, including the Convention, as outlined in 28 § U.S.C. 1331 and reiterated in 9 U.S.C. §§ 203, 205.

15.    In particular, the Convention is a multilateral treaty that requires courts to enforce arbitration provisions in contracts between citizens of signatory countries. *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's, London,* CV-18-6192, 2018 WL 4042874 at *3 (E.D. La., August 24, 2018).  As the Supreme Court explained, "[t]he goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n.15 (1974). Over one hundred countries have signed the Convention, including the United States, the United Kingdom of Great Britain and Northern Ireland, and Germany.  *Port Cargo Serv.*, at *3; *see also* www.newyorkconvention.org.

16.    To this end, the Convention requires courts to refer cases to arbitration.  It provides:

> 1.    Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

* * *

3.     The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS art. II (1-2), T.I.A.S. No. 6997, 21 U.S.T. 2517 (U.S Treaty Dec. 29, 1970).

17.     Before the Convention was effective in the United States, Congress passed Chapter 2 of the FAA to give federal courts exclusive jurisdiction over cases arising under the Convention.

18.     Specifically, federal district courts have original jurisdiction of claims that arise under the Constitution, treaties, or laws of the United States. 28 U.S.C. § 1331. Pursuant to 9 U.S.C. § 203, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States [and] [t]he district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

19.     Even more, Section § 205 provides that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may . . . remove such action or proceedings to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9. U.S.C. § 205.  This provision is broadly construed.  *Acosta v. Master Maint. & Constr.*, 452 F.3d 373, 377 (5th Cir. 2006) ("So generous is the removal provision that we have emphasized that the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.'").

20.     To remove a case under 9 U.S.C. § 205, only two conditions must be met. Specifically, there must be: (1) the presence of an arbitration agreement or award falling under the Convention; and (2) an action or proceeding in state court that "relates to" that agreement or award.  *Hitchcock Independent School District v. Certain Underwriters at Lloyd's, London*, NO. 3:19-cv-00198, 2019 WL 5299175, at *2-3 (S.D. Tex., Oct. 11, 2019).   Both elements for removal under § 205 are present here.

21.     An agreement "falls under" the Convention if: (1) there is an agreement in writing; (2) arising out of a commercial relationship; (3) that includes an arbitration provision; and (4) one of the parties is not a U.S. citizen.  *Id.; Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641, 646–47 (E.D. La. 2009).[2]

22.     Here, these factors are clearly met: (1) the Policy is an agreement in writing; (2) the agreement provides for Arbitration in Tennessee; (3) the agreement arises out of a commercial relationship; and (4) two of the insurers, Nephila 2357 and RenaissanceRe Corporate Capital (UK) Limited, are citizens of England and Wales.  In particular, both Nephila 2357 and RenaissanceRe Corporate Capital (UK) Limited are private limited companies with their principal places of business in England and Wales.  Even more, because these members subscribed to the Policy through the Lloyd's of London insurance market in the United Kingdom, the contract has a "reasonable relation" to a foreign state.

23.     For these reasons, this Court has consistently held that it has original jurisdiction to compel arbitration when evaluating arbitration provisions in insurance policies entered into with members of the Lloyd's of London insurance market.  *See e.g.*, *Hitchcock Independent*

---

[2] The four-element test for determining whether an agreement falls under the Convention is part of the same test for determining whether the Court should compel the case to arbitration. *Port Cargo Serv., LLC,* 2018 WL 4042874, at *6; *YTECH 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's,* London, 359 F.Supp.3d 1253 (S.D. Fla. 2019).

*School District*, 2019 WL 5299175; *Urban Meridian Group, Inc. v. Certain Underwriters at Lloyd's, London et al.*, No. H-19-2405, 2020 WL 4728082 (S.D. Tex., Feb. 27, 2020); *Bollinger Investment Partners, Ltd. v. Certain Underwriters at Lloyd's, London et al.*, No. 6:20-cv-00011, United States District Court for the Southern District of Texas (May 21, 2020) (a true and correct copy attached as Exhibit "C").   The Insurer Defendants plan to move to compel arbitration once this matter is removed.

24.      Second, there is clearly a state court action that relates to an arbitration provision. In particular, in the State Court Action, the Plaintiff seeks damages under a Policy with an Arbitration Provision, which requires that all disputes be resolved in Tennessee in front of an arbitration panel. Disputes over insurance coverage are "almost by definition" related to arbitration clauses.  *Acosta,* 452 F.3d at 378. Therefore, in the present case, the State Court Action relates to the arbitration agreement, and removal is appropriate.  *Port Cargo Serv.*, 2018 WL 4042874, at *4–5.

25.      For all these reasons, removal is proper under the FAA and 28 U.S.C. §§ 1331, 1441, and 1446.

## IV.      <u>REMOVAL PROCEDURES</u>

26.      Removal of this action is timely because it may be removed any time before trial. 9 U.S.C. § 205.  Even more, out of an abundance of caution, it is being removed within thirty days of service of all the defendants.

27.      Removal is properly made to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1441(a) and 9 U.S.C. § 205 because Fort Bend County, where the State Court Action is currently pending, is within the Southern District of Texas

28.      All Defendants consent to this removal.

29.     The Insurer Defendants will file written notice of the filing of this Notice of Removal with the Clerk of the Court where the State Court Action is pending pursuant to 28 U.S.C. § 1446(d).

## V.     **COMPLIANCE WITH LOCAL RULE 81**

30.     Pursuant to Local Rule ("LR") 81 of the Southern District of Texas, the Insurer Defendants are filing with this Notice of Removal the following:

1.     All executed process in the case, a true and correct copy attached as Exhibit "E;"

2.     Pleadings asserting causes of action, e.g., petitions, counterclaims, cross actions, third-party actions, interventions and all answers to such pleadings, a true and correct copy attached as Exhibit "F";

3.     All orders signed by the state judge (none available);

4.     The docket sheet, a true and correct copy attached as Exhibit "D";

5.     An index of matters being filed, a true and correct copy attached as Exhibit "A"; and

6.     A list of all counsel of record, including addresses, telephone numbers, and parties represented, a true and correct copy attached as Exhibit "G."

**WHEREFORE**, Defendants Underwriters at Lloyd's, London, Interstate Fire & Casualty Company, and Independent Specialty Insurance Company, hereby remove this action from the District Court for Fort Bend County, Texas to the United States District Court for the Southern District of Texas – Houston Division.

Respectfully submitted this 20th day of January, 2021.

Respectfully Submitted,

WOOD, SMITH, HENNING & BERMAN, LLP

*/s/ Justin P. England*
Justin P. England, State Bar No. 24063955
901 Main Street, Suite 3670
Dallas, Texas 75202
Phone No. 469-210-2050
Fax No. 469-210-2051
jengland@wshblaw.com

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded to all counsel of record pursuant to the applicable Federal Rules of Civil Procedure as follows:

*VIA ELECTRONIC FILING AND SERVICE*

Thomas Scott Edwards
THE VOSS LAW FIRM, P.C.
26619 Interstate 45 South
The Woodlands, Texas 77380
713/861-0015 Telephone
713/861-0021 Facsimile
scott.edwards@vosslawfirm.com
**ATTORNEY FOR PLAINTIFF**

DATED this 20th day of January, 2021.

*/s/ Justin P. England*
Justin P. England